■ CONTICOMMODITY SERVICES, INC., Respondent, v ROBERT F. HALTMIER, Appellant.—In an action to foreclose a mortgage and to recover money damages, defendant appeals from (1) an order of the Supreme Court, Suffolk County, entered August 28, 1979, which granted plaintiff's motion to modify said court's previous judgment of money damages in favor of plaintiff, pursuant to an order of this court, dated May 14, 1979, and (2) an order and modified judgment (one paper) of foreclosure and sale and money damages of the same court, entered January 23, 1980. Order entered August 28, 1979 and order and modified judgment (one paper) entered January 23, 1980, reversed, without costs or disbursements, and matter remanded to Trial Term for a hearing consistent herewith. It was error under the circumstances of this case for Trial Term to have determined, without a hearing, the amount of credit to be allowed to the defendant in reducing the judgment debt. In a prior decision involving the same action (*Conticommodity Servs. v Haltmier,* 67 AD2d 480, 481), it was held that the judgment in the sum of $61,747.76 in favor of the plaintiff, a commodity brokerage firm, against the defendant, an account executive employed by it, must "be modified so as to reduce the amount awarded therein as damages to reflect the sums, if any, actually collected from defendant's customers but not yet reflected in the judgment, and *the matter remanded to Trial Term to determine, after a hearing if one is necessary,* the amount of money presently due the plaintiff". (Emphasis added.) The underlying indebtedness resulted from moneys becoming due to the plaintiff from deficits incurred in defendant's account with plaintiff by reason of defendant's own unprofitable trading in commodity futures, as well as the deficits in the accounts of two of his customers. This court determined the basis for his responsibility to the plaintiff in relation to his customer accounts as follows (p 481): "He agreed, when hired, to assume the role of *guarantor* of any customer deficits (a common practice in this volatile field), and thus became an original promisor for whose personal benefit (i.e., employment) the promise was made". (Emphasis added.) To secure the defendant's rights in the plaintiff's causes of action against his former customers insofar as any recovery may have the beneficial effect of reducing his judgment indebtedness, this court also stated (p 482): "However, as plaintiff concedes in its brief, the defendant must be credited with any future payments received from any of his 'customers for deficits in their accounts [recovered] by way of suit or otherwise.' Accordingly, the action should be remitted to Trial Term for a computation of the amount presently due and owing to plaintiff and for a corresponding reduction in the amount of the judgment. Plaintiff shall keep defendant apprised of any such payments received *in futuro* and accord him a corresponding credit. In order to insure that the foregoing is accomplished with a minimum of difficulty and delay, we are directing that the court retain jurisdiction for the purpose of enforcing the entry of partial or complete satisfactions of judgment as justice and the facts of the case may require." Following the trial of the instant action the plaintiff, on July 28, 1978, had entered into two stipulations of settlement in which it settled two lawsuits involving claims aggregating $72,421.26 for the total sum of $25,800, and by the motion brought on July 26, 1979 by the plaintiff pursuant to CPLR 5019 (subd [b]), it sought to reduce the amount of the judgment to $51,381 by subtracting the sum of $10,366.76 which it had received on account of the settlement up to that time. The relationship of the defendant to the plaintiff, as so adjudicated, was that of a guarantor and, as such, the manner of the future dealings between the parties required the application of legal principles which pertain to the legal

obligations as between parties standing in such position as to each other. The duty imposed upon the plaintiff, under such circumstances, was *more than* the sterile requirement of reporting its bookkeeping entries regarding the account to the defendant. Here, implicit in the prior decision of this court was the recognition of a subsisting undertaking on the part of the plaintiff to continue suits against defendant's former customers for the specific purpose of obtaining funds to reduce the judgment debt. Essentially, plaintiff, in its role as obligee, was under an equitable obligation, to hold the causes of action in trust for the surety, who is entitled to their benefit and *to* have them applied in extinguishment *pro tanto* of his liability (see *National Exch. Bank of Lansingburgh v Silliman,* 65 NY 475; 57 NY Jur, Suretyship and Guaranty, § 194). This case does *not* present the situation where the plaintiff has reported that a given sum of money has either been received on account of the customer accounts or even that one or both had been paid in full. In the first instance, the defendant would be apprised that the judgment debt could be reduced by the partial payment received and that there yet remained part of the claims unpaid to which he may look in the future for an additional credit. Under such circumstances, it may be concluded that a hearing would not be necessary to direct a reduction of the judgment. Had one or both of the customers paid his respective obligations in full, there would likewise be *no necessity for a hearing by the court to* similarly modify the judgment. However, in the instant matter it is revealed in the record that the amount by which the plaintiff seeks to reduce its judgment against the defendant represents the fruits of the settlements. In view of the defendant's substantive rights as guarantor with regard to plaintiff's claims against his former customers, he, as an interested party, is entitled to inquire into all of the facts and circumstances relating to how these proceeds were obtained and the amount to be applied in reduction of the judgment debt. The proposed modification did not involve merely a mathematical correction as envisioned by CPLR 5019 (subd [b]); it presented to the court the resolution of issues which could only be determined after a hearing of the evidence, as was contemplated by the prior decision of this court. In defendant's papers in opposition to plaintiff's motion to amend the judgment, it appears that to ascertain the facts pertaining to the issue presented, defendant, by correspondence, had sought an examination before trial of an officer or employee of the plaintiff having knowledge of the facts and the production of the "records of any and all actions instituted against customers who were serviced by Mr. Haltmier and the results thereof, etc.". The plaintiff concededly had the exclusive knowledge of all the facts pertaining to its lawsuits against the defendant's former customers and the settlement which produced the funds, and, under such circumstances, the matter should not have been determined solely on the affidavits submitted on behalf of the plaintiff *(Verity v Peoples State Bank of Baldwin,* 1 AD2d 833; *Universal Major Elec. Appliances, v Rudisco,* 3 AD2d 687; *De France v Oestrike,* 8 NY2d 735). Moreover, the defendant articulated the exclusivity of knowledge of the facts concerning payments received in reduction of the judgment debt (cf. *Vermut v R & M Liqs.,* 50 NY2d 828). Damiani, J. P., Lazer, Gibbons and Martuscello, JJ., concur.